IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| WILLIAM HAYWOOD GORDON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No.: 5:22-cv-00458-MTT** |
| WELLS FARGO BANK, N.A. INC. | ) | |
| (WELLS FARGO DEALER SERVICES, | ) | |
| WELLS FARGO AUTO FINANCE, LLC); | ) | |
| SUPERIOR RECOVERY AND | ) | |
| TRANSPORT, LLC, | ) | |
| | ) | |
| **Defendants.** | ) | |

## WELLS FARGO BANK, N.A.'S MOTION TO DISMISS
## AND INCORPORATED MEMORANDUM OF LAW

Defendant identified as "Wells Fargo Bank, N.A., Inc. (Wells Fargo Dealer Services, Wells Fargo Auto Finance, LLC," properly known as Wells Fargo Auto, a division of Wells Fargo Bank, N.A., fka Wells Fargo Dealer Services[1] ("Wells Fargo") hereby moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint, titled as an "Affidavit of Complaint," of Plaintiff William Haywood Gordon ("Plaintiff") for failure to state a claim upon which relief may be granted. In support of its motion, Wells Fargo respectfully states as follows:

### I. INTRODUCTION

Plaintiff's claims in this proceeding are a futile attempt to discharge his loan obligations based on a "rescission" theory that simply has no legal veracity. Plaintiff's allegations and exhibits

---

[1] Wells Fargo Dealer Services, Inc. merged with and into Wells Fargo Bank, N.A. effective July 1, 2011, and ceased to exist as a separate corporate entity. Likewise, Wells Fargo Auto Finance, LLC, merged with and into Wells Fargo Bank, N.A., effective February 1, 2012, and ceased to exist as a separate corporate entity.

demonstrate that Plaintiff entered into a vehicle loan with Wells Fargo in June 2022, promptly defaulted, and is now trying to undo the resulting repossession. Plaintiff's Complaint asserts against Wells Fargo attempted claims for violation of the Federal Trade Commission Act, the Truth in Lending Act ("TILA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Fair Credit Reporting Act ("FCRA"). As outlined below, however, each of Plaintiff's claims lacks both legal and factual merit. Indeed, the statutes relied upon in Plaintiff's Complaint either do not provide a private right of action, do not apply to the loan transaction at issue, or do not apply to Wells Fargo. Accordingly, for all the reasons herein, Wells Fargo respectfully requests that Plaintiff's Complaint against it be dismissed, in its entirety, with prejudice.

## II. <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint when a plaintiff's allegations fail to set forth facts which, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The pleadings must raise the right to relief beyond the speculative level, and a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering a 12(b)(6) motion, the court should accept all well-pleaded facts in the complaint as true and draw all inferences in the plaintiff's favor. *Craft v. Olszewski*, 428 F. App'x 919, 921 (11th Cir. 2011). It may also consider any documents attached to a complaint as exhibits or incorporated into the complaint by reference. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). However, the court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir.

2002). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

### III. BACKGROUND

As set forth in the Complaint and exhibits thereto, Plaintiff entered into a Retail Installment Sales Contract (the "RISC") for the purchase of a 2019 Chevy Tahoe (the "Vehicle") on June 1, 2022. [*See* Compl. ¶ 6 and Ex. 1] The RISC was immediately assigned by the seller to Wells Fargo. [*Id.* at ¶ 7 and Ex. 1] Pursuant to the RISC, Wells Fargo financed a loan to Plaintiff in the amount of $54,902.00 (the "Loan"), and Plaintiff was required to remit payments to Wells Fargo in the amount of $919.04 per month beginning July 16, 2022. [*See id.* at Ex. 1, p. 1][2]

Plaintiff almost immediately fell behind on his Loan payments, resulting in Wells Fargo sending a notice on October 3, 2022, advising of Plaintiff's default and the actions necessary to avoid repossession of the Vehicle. [*See id.* at ¶ 11 and Ex. 2.] Rather than bring the Loan current, and despite maintaining possession of the Vehicle, Plaintiff attempted to unilaterally "rescind" the Loan pursuant to an inapplicable provision of the TILA. [*See id.* at ¶ 13.] Because Plaintiff never cured his default, Wells Fargo sent another notice on December 15, 2022, advising Plaintiff that the full amount of the Loan was due and owing, and that the Loan was being reporting to the credit bureaus as delinquent. [*See id.* at Ex. 6]

The Vehicle was subsequently repossessed in accord with the provisions of the governing RISC. [*See id.* at ¶ 19 and Ex. 1, p. 3 ("If you default, we may take (repossess) the vehicle from

---

[2] Plaintiff's Complaint references and attaches two versions of the RISC. [*See* Compl. ¶ 15 and Exs. 1, 4.] While Plaintiff vaguely contends one such version is "fraudulent," he does not dispute that he entered into the RISC, that he obtained the Loan from Wells Fargo, or that he purchased the Vehicle. Further a review of Plaintiff's exhibits reveals that the primary terms of the two RISC documents are identical.

49887866 v2

you . . .")] Wells Fargo sent Plaintiff a letter on December 23, 2022, advising him of the forthcoming sale of the Vehicle and his options to redeem it. [*See id.* at Ex. 6.] Rather than attempt to redeem, Plaintiff has filed the present lawsuit contending that by his simple mailing of a unilateral "rescission notice," Wells Fargo has no security interest and is not entitled to recover the nearly $60,000 it paid for Plaintiff to obtain the Vehicle. Unfortunately for Plaintiff, this is not how loans work, and none of the causes of action in his Complaint have merit.

## IV. <u>ARGUMENT</u>

### A. <u>No Private Right of Action Exists Under the Federal Trade Commission Act.</u>

Although he provides no details, Plaintiff's Complaint references purported violations of the Federal Trade Commission Act. [*See* Compl., p. 2.] To the extent Plaintiff is attempting to assert a claim against Wells Fargo for violation of such Act, it fails for the lack of any private right of action. *Lingo v. City of Albany Dep't of Cmty. & Econ. Dev.*, 195 F. App'x 891, 894 (11th Cir. 2006) ("There is no private cause of action implied under the Federal Trade Commission Act.") (citing *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 361 n.6 (5th Cir. 1977) (noting that "regulation is in the hands of the administrative agency, and not the private citizen")).

### B. <u>TILA Rescission Rights Do Not Apply to Vehicle Loans.</u>

Plaintiff contends Wells Fargo violated the TILA, and that he is therefore entitled to damages under 15 U.S.C. § 1640, because Wells Fargo failed to honor his notice of rescission of the Loan pursuant to 15 U.S.C. § 1635. [*See* Compl. at ¶¶ 13-14, 26-27.]  Section 1635 of the TILA, however, does not apply to automobile loans such as the one at issue in this case. Rather, by its plain language, § 1635 applies only to loans secured by a borrower's "principal dwelling":

> [I]n the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest . . . is or will be retained or acquired ***in any property which is used as the principal dwelling of the person to whom credit is extended***, the obligor shall have the right to rescind

the transaction until midnight of the third business day following the consummation of the transaction. . .

15 U.S.C. § 1635(a) (emphasis added).

"Dwelling" is, in turn, defined by the TILA as "a residential structure or mobile home which contains one to four family housing units, or individual units of condominiums or cooperatives." 15 U.S.C. § 1602(w).

The Vehicle at issue is not alleged to be, nor could be, Plaintiff's "principal dwelling" as defined by the TILA. Thus, the rescission rights provided by § 1635 simply do not apply to the subject Loan. Even if they did, Plaintiff's allegations make clear that his purported rescission attempt was sent far more than three days after the Loan transaction was consummated. For these reasons, Plaintiff's TILA claim should be dismissed, with prejudice. Likewise, Plaintiff's contentions that the Loan was rescinded and that Wells Fargo no longer holds a valid security interest in the Vehicle are without merit and cannot support any cause of action.[3]

## C.    Wells Fargo Is Not a Debt Collector Under the FDCPA.

In and amongst Plaintiff's futile allegations that he was entitled to rescind his Loan, Plaintiff alleges that Wells Fargo violated various provisions of the FDCPA through its October 3, 2022, default notice and December 15, 2022, acceleration notice. [*See* Compl. ¶¶ 12, 17-18.] Plaintiff further alleges that the repossession of the Vehicle by Superior Recovery was in violation of the FDCPA. [*See id.* at ¶¶ 24.]

---

[3] In addition to his rescission allegations, Plaintiff vaguely references a recently learned belief that his debt was satisfied simply as a result of his issuing a promissory note as "legal tender" to Wells Fargo pursuant to the Federal Reserve Act. [*See* Compl. ¶¶ 9-10.] Such allegations arise from the "vapor money theory," which posits that "a loan imposes no repayment obligation if the indebtedness was funded with credit as opposed to hard currency." *Lawrence v. Movement Mortg., LLC*, No. 1:21-CV-04160-SEG-JEM, 2022 WL 2389275, at *4 (N.D. Ga. Apr. 29, 2022), *report and recommendation adopted*, No. 1:21-CV-4160-SEG, 2022 WL 3211629 (N.D. Ga. June 15, 2022). The vapor money theory, however, has been "overwhelmingly rejected" by district courts across the country, including in Georgia. *Id.* Thus, to the extent Plaintiff may attempt to base any of his claims on such allegations, they likewise fail.

First and foremost, for the reasons discussed above, Plaintiff had no right under the TILA to rescind the Loan. Wells Fargo's lien on the Vehicle therefore remained valid, and it was entitled to repossess the Vehicle in accord with the terms of the governing RISC. Thus, to the extent Plaintiff's FDCPA claims are premised on the attempted "rescission" of the Loan, they must fail.

Plaintiff's FDCPA claims must also fail because Wells Fargo is not a debt collector. The FDCPA applies *only* to debt collectors, which the Act defines as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *See* 15 U.S.C. § 1692a(6); *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1302 (11th Cir. 2012). Conversely, a creditor is "any person who offers or extends credit creating a debt or to whom a debt is owed. 15 U.S.C. § 1692a(4). "Unlike debt collectors, creditors typically are not subject to the FDCPA." *Turner v. Wells Fargo Dealer Servs., Inc*., No. 117CV01257TCBCMS, 2017 WL 8220605, at *6 (N.D. Ga. Oct. 23, 2017), *report and recommendation adopted*, No. 1:17-CV-1257-TCB, 2017 WL 8222344 (N.D. Ga. Nov. 13, 2017).

Plaintiff's allegations and exhibits confirm that the RISC giving rise to the Loan was immediately assigned to Wells Fargo by the dealership. [*See* Compl. ¶¶ 6-8 and Ex. 1, p. 4.] As assignee of the RISC and the entity financing the Loan, Wells Fargo owns the debt owed to it by Plaintiff, and any attempts to collect on that debt are those of a creditor.[4] *Watts v. Wells Fargo Dealer Servs., Inc.*, No. 4:15-CV-02250-KOB, 2017 WL 2289111, at *3 (N.D. Ala. May 25, 2017)

---

[4] Plaintiff alleges that Wells Fargo Dealer Services, Inc. "is using" Wells Fargo Auto Finance, LLC "to act as a debt collector toward the consumer for the alleged debt arising out of the June 1, 2022, transaction." [Compl. ¶ 8.] This allegation is not only conclusory and unsupported with factual details, it is also untrue. As noted above, both Wells Fargo Dealer Services, Inc. and Wells Fargo Auto Finance, LLC, merged with and into Wells Fargo Bank, N.A., more than a decade before the subject transaction.

("Under the Retail Installment Contract, Wells Fargo owns the debt owed to it by Mr. Watts; its attempts to collect on that debt are those of a creditor who cannot be liable under the FDCPA."); *Baron v. Wells Fargo Bank, N.A.*, No. SACV121161AGRNBX, 2012 WL 13019953, at *4 (C.D. Cal. Oct. 23, 2012) (dismissing claims against Wells Fargo based on plaintiff's failure to adequately allege Wells Fargo was a debt collector with respect to her vehicle loan).

As one District Court recently explained:

> Mr. Hudson's FDCPA claim fails because he alleges no facts that would allow the court to infer that Wells Fargo operates as a debt collector within the meaning of the FDCPA, as opposed to a creditor seeking to collect a debt for its own benefit. Although Mr. Hudson now asserts that Wells Fargo "is not the creditor, but fits the definition of a debt collector," the court need not accept his legal conclusion as true and he otherwise fails to "plead[ ] factual content that allows the court to draw the reasonable inference that" Wells Fargo has acted as a debt collector. Indeed, the facts Mr. Hudson does allege show that Wells Fargo is the assignee of the vehicle loan Mr. Hudson entered into with Northwest Motorsports and that Wells Fargo now seeks to collect payment on that loan for its own benefit. Because "[t]he FDCPA's definition of debt collector does not include ... any assignee of the debt," *Ronzone v. Aurora Loan Servs.*, LLC, No. C11-5025BHS, 2012 WL 502685, at *2 (W.D. Wash. Feb. 14, 2012), Mr. Hudson fails to state a claim under the FDCPA. Accordingly, Mr. Hudson's FDCPA claim is DISMISSED with prejudice.

*Hudson v. Scharf*, No. C21-5827JLR, 2022 WL 226077, at *3 (W.D. Wash. Jan. 26, 2022) (certain citations omitted).

Likewise here, Plaintiff's FDCPA claim against Wells Fargo should be dismissed with prejudice because Wells Fargo is not a debt collector subject to the Act.

### D.    **Plaintiff Has Not Stated a Viable FCRA Claim.**

Plaintiff appears to allege that Wells Fargo violated § 1681b(a)(2) of the FCRA by reporting negative information about the Loan to the credit bureaus and by providing information "in its capacity of a Consumer Reporting Agency" to Superior Recovery. [*See* Compl. ¶¶ 18, 20.] This claim fails for multiple reasons.

First and foremost, Wells Fargo is not a consumer reporting agency. The FCRA defines a consumer reporting agency as

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). Plaintiff's Complaint contains no factual allegations supporting a finding that Wells Fargo regularly assembles or furnishes consumer reports. Nor could it. Wells Fargo is not itself a credit reporting agency, but a furnisher of information to the credit reporting agencies. *See Clark v. Wells Fargo Bank*, No. 1:19-CV-05863-AT-RGV, 2020 WL 9936687, at *2 (N.D. Ga. Feb. 6, 2020) ("Wells Fargo is a furnisher of information to credit reporting agencies ('CRAs')") (quoting *Jackson v. Genesys Credit Mgmt.*, No. 06-61500-CIV, 2007 WL 2113626, at *2 (S.D. Fla. July 23, 2007)).

Section 1681b(a)(2), cited by Plaintiff, sets forth certain permissible purposes for which a consumer reporting agency may furnish a consumer report; it does not govern the conduct of furnishers of credit information such as Wells Fargo. *See* 15 U.S.C. § 1681b. Thus, Plaintiff cannot state a claim against Wells Fargo pursuant to § 1681b.

Rather, 15 U.S.C. § 1681s-2 "is the only part of the FCRA that governs the duties of furnishers of information to the [CRAs.]." *Clark*, 2020 WL 9936687 at *2. The section of the FCRA governs claims by consumers, like Plaintiff, against a "furnisher" of information, like Wells Fargo, based on allegations that the furnisher submitted incorrect information about the consumer to one or more credit reporting agencies. *See* 15 U.S.C. § 1681s-2. The FCRA imposes two duties on a furnisher. First, § 1681s-2(a) requires a furnisher to submit accurate information to the credit bureaus. Second, § 1681s-2(b) requires a furnisher to investigate and promptly respond to notices of customer disputes from the credit bureaus. *See id.* Importantly, however, there is no private right

of action under § 1681s-2(a) to sue furnishers for reporting false information. *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018). Thus, to the extent Plaintiff's FCRA claim against Wells Fargo is based on an allegation that it improperly or wrongfully reported the Loan to the credit bureaus, such claim falls squarely within the requirements of § 1681s-2(a) and must be dismissed.

Should the Court construe the Complaint as alleging a claim under § 1681s-2(b), dismissal is likewise warranted. That section imposes on furnishers a duty to investigate "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1). By its terms, § 1681s-2(b)(1) creates a private right of action for a furnisher's failure to investigate only if the furnisher received notice of the dispute from a credit reporting agency. *See Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009); *see also Pickney v. SLM Fin. Corp.*, 433 F. Supp. 2d 1316, 1318–19 (N.D. Ga. 2005) ("Under [§ 1681s-2 of the FCRA], furnishers of information to credit reporting agencies have a duty to, among other things, investigate disputed information and report the results of such investigation to the agencies; however, this duty arises only after receiving notice of a dispute from a credit reporting agency."). The Complaint asserts no allegation that Plaintiff disputed the Loan to a credit reporting agency, let alone that any credit reporting agency notified Wells Fargo of such a dispute. Accordingly, any FCRA claim brought by Plaintiff fails as a matter of law and should be dismissed with prejudice.

## V. **CONCLUSION**

For the foregoing reasons, Wells Fargo respectfully requests that this Court dismiss with prejudice all claims asserted against it in Plaintiff's Complaint.

49887866 v2

Respectfully submitted,


/s/ Jennifer E. Ziemann
Jennifer E. Ziemann
Georgia Bar No. 264280
jziemann@burr.com
*Attorney for Defendant*

BURR & FORMAN LLP
171 Seventeenth Street NW, Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

49887866 v2

10

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed using the CM/ECF system, which will provide notice to all counsel of record enrolled for electronic service, and that it has been served on all unrepresented parties by U.S. Mail, on this the 12th day of January, 2023:

William-Haywood Gordon
1659 Highway 20 West, Suite 370
McDonough, Georgia 30253
williamhaywoodgordon@gmail.com

*/s/ Jennifer E. Ziemann*
Jennifer E. Ziemann
Georgia Bar No. 264280
*Attorney for Defendant*

BURR & FORMAN LLP
171 17th Street, NW, Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244