**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **WILLIAM HAYWOOD GORDON,**     ) | |
| ) | |
| ) | |
| **Plaintiff,**     ) | |
| ) | |
| **v.**     ) | **CIVIL ACTION NO. 5:22-cv-458 (MTT)** |
| ) | |
| **WELLS FARGO BANK NA INC, *et al.,***     ) | |
| ) | |
| ) | |
| **Defendants.**     ) | |
| _____ ) | |

## ORDER

Pro se plaintiff William Haywood Gordon filed this lawsuit against Wells Fargo

Bank, N.A., Inc. ("Wells Fargo") and Superior Recovery and Transport, LLC ("Superior

Recovery") alleging that the defendants unlawfully seized his vehicle.  Doc. 1.  Wells

Fargo moves to dismiss.  Doc. 7.  In response, Gordon moves to amend his complaint.

Doc. 18.  For the following reasons, Wells Fargo's motion to dismiss (Doc. 7) is

**GRANTED** and Gordon's motion to amend (Doc. 18) is **GRANTED in part** and **DENIED**

**in part**.

### I. BACKGROUND

On June 1, 2022, Gordon entered into a retail installment sales contract ("RISC")

for the purchase of a 2019 Chevrolet Tahoe.  Docs. 18-3 ¶¶ 11-12, 18; 18-8.  The RISC

was immediately assigned by the seller, Five Star Chevrolet, to Wells Fargo.  Docs. 18-

3 ¶ 21; 18-8 at 4.  Pursuant to the RISC, Gordon was required to make monthly

payments to Wells Fargo.  Doc. 18-8 at 1. Beginning in October 2022, Wells Fargo

notified Gordon that it had not received timely payments and warned Gordon that

continued default would result in repossession of the vehicle.  Docs. 18-13; 18-14; 18-17.  On December 22, 2022, Wells Fargo, through its repossession agent Superior Recovery, repossessed Gordon's vehicle.  Doc. 18-3 ¶¶ 32-37.

Gordon's filings allege multiple, often contradictory, reasons why the repossession of his car was unlawful.  *See* Docs. 1; 2; 12-1; 18-3.  Gordon's original complaint and first motion for a Temporary Restraining Order ("TRO") claim that he "rescinded" the RISC and, thus, Wells Fargo's "security interest rights" were "terminated."  Docs. 1 ¶ 13-14; 2 ¶ 2.  Gordon's motion to amend his TRO abandons the "recission" theory and claims that the RISC was never assigned to Wells Fargo—despite Gordon's prior allegation that Five Star Chevrolet "assigned its interest" to Wells Fargo.  *Compare* Doc. 1 ¶ 7 *with* Docs. 11 at 3; 12 ¶ 1.  Finally, Gordon's proposed amended complaint departs from both these theories and contends that he "tendered payment in complete performance of his obligation on RISC 1" and that Wells Fargo created a second "fraudulent" "RISC 2."  Doc. 18-3 ¶¶ 26, 28-32.

All of Gordon's claims arise out of the alleged unlawful repossession of his vehicle.[1]  Specifically, Gordon's proposed amended complaint alleges that Wells Fargo violated the Fair Debt Collection Practices Act ("FDCPA"), and seeks leave to add claims under the Georgia Fair Business Practice Act ("GFBPA") and for the tort of "deceit," based on Wells Fargo's efforts to collect payment under the "fraudulent" "RISC 2."  *Id*. ¶¶ 54-61, 73-74, 80-87.  Similarly, Gordon's proposed amended complaint alleges that Superior Recovery violated the FDCPA and seeks leave to add a

---

[1] Gordon's original complaint alleged that Wells Fargo and Superior Recovery violated the Federal Trade Commission Act ("FTCA"), the Truth in Lending Act ("TILA"), the Fair Credit Reporting Act ("FCRA"), and the Fair Debt Collection Practice Act ("FDCPA").  Doc. 1.  Gordon's amended complaint abandons his FTCA, TILA, and FCRA claims against Wells Fargo and Superior Recovery.  Doc. 18-3.

conversion claim for effectuating the repossession of his vehicle. *Id.* ¶¶ 62-65, 88-91. Finally, Gordon requests leave to add claims against Five Star Chevrolet, the dealership that sold Gordon the 2019 Tahoe, Cox Automotive, the company now in possession of his car, Michael Santomassimo, Wells Fargo's Chief Financial Officer, and Stephen Rowley, Cox Automotive's Chief Executive Officer. Docs. 18-2; 18-3. Wells Fargo moves to dismiss Gordon's FDCPA claims and contends that Gordon's motion to amend should be denied for futility. Docs. 7; 19. Superior Recovery has not responded.

## II. STANDARD

### A. Motion to Dismiss[2]

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

---

[2] Gordon argues that Wells Fargo's motion to dismiss should be converted to a motion for summary judgment because Wells Fargo references documents outside the pleadings. Doc.11 at 3-4. But the only documents Wells Fargo references are the documents Gordon attached to his complaint and it is well settled that a Court may consider any documents attached to a complaint when ruling on a motion to dismiss. Fed. R. Civ. P. 10(c); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Thus, there is no basis for converting Wells Fargo's motion to dismiss into a motion for summary judgment.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (cleaned up).  The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

## B. Motion to Amend

Leave to amend should be "freely give[n] ... when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Court "need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."  *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

### III. DISCUSSION

**A. Claims Against Wells Fargo**

Gordon claims that Wells Fargo violated the FDCPA, GFBPA, and committed "deceit" by attempting to collect payments on the "fraudulent" "RISC 2" and using "alternative names," such as Wells Fargo Dealer Services and Wells Fargo Auto.  Doc. 18-3 ¶¶ 55-61, 73-74, 80-87.  Furthermore, Gordon alleges a breach of fiduciary claim against Michael Santomassimo, Wells Fargo's Chief Financial Officer.  *Id.* ¶¶ 96-99. Wells Fargo moves to dismiss Gordon's claims under the FDCPA and contends that Gordon's motion to amend to add claims under the GFBPA, for the tort of "deceit," and for breach of fiduciary duty should be denied for futility.  Docs. 7; 19.

*1. Fair Debt Collection Practice Act*

Gordon alleges that Wells Fargo violated §§ 1692d, 1692e, 1692f, 1692g, and 1692j of the FDCPA when it sent him letters informing him that he had defaulted on his loan and ordered Superior Recovery to repossess his vehicle.[3]  Doc. 18-3 ¶¶ 57-60.

To plausibly state a claim under §§ 1692d, 1692e, 1692f, and 1692g of the FDCPA "a plaintiff must allege, among other things, (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection."  *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012).  Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

---

[3] Gordon references the public law statutory provisions in his amended complaint.  Doc. 18-3.  The Court will refer to the official code versions of the FDCPA.

Conversely, a creditor is "any person who offers or extends credit creating a debt or to whom a debt is owed."  15 U.S.C. § 1692a(4).

Gordon alleges that the RISC was immediately assigned by Five Star Chevrolet to Wells Fargo.  Docs. 18-3 ¶ 21; 18-8.  Because Wells Fargo owns the debt under the RISC, its attempts to collect on that debt are those of a creditor.  *See Davidson v. Cap. One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015); *see also Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) ("To this, the federal courts are in agreement: A bank that is a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts.") (cleaned up); *Watts v. Wells Fargo Dealer Servs., Inc.*, 2017 WL 2289111, at *3 (N.D. Ala. May 25, 2017) ("Under the Retail Installment Contract, Wells Fargo owns the debt owed to it by Mr. Watts; its attempts to collect on that debt are those of a creditor who cannot be liable under the FDCPA.").  Nevertheless, Gordon argues that Wells Fargo is not a creditor because Five Star Chevrolet "failed to sign" the assignment provision of the RISC.  Docs. 11 at 8; 12-1 at 2.  First, this argument contradicts Gordon's allegation in his complaint that the RISC was assigned to Wells Fargo.  Doc. 18-3 ¶ 21; *see also* Doc. 1 ¶ 7.  Second, the RISC Gordon attaches to his complaint is signed by a Five Star Chevrolet representative.  Doc. 18-8 at 4.  Thus, the RISC was assigned to Wells Fargo, Wells Fargo is not a debt collector, and Gordon fails to state a claim under §§ 1692d, 1692e, 1692f, and 1692g of the FDCPA.

Unlike the above-mentioned sections, § 1692j of the FDCPA does not limit liability to "debt collectors."  This section makes it "unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a

consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j(a). In other words, § 1692j(a) prohibits "flat rating" or designing, creating, or furnishing forms that would give Gordon the impression that anyone other than Wells Fargo was collecting or attempting to collect the RSIC payments. *Gallaher v. Ests. at Aloma Woods Homeowners Ass'n, Inc.*, 316 F. Supp. 3d 1358, 1364 (M.D. Fla. 2018). Gordon cites to Wells Fargo's December 15, 2022 letter informing Gordon that his loan was in default and how to avoid repossession of his vehicle, as the "deceptive form" violating § 1692j(a). Doc. 18-3 ¶¶ 32, 58. The letter clearly identifies Wells Fargo, the creditor, as the entity collecting the loan payments. Doc. 18-17. Thus, Gordon fails to state a claim under § 1692j(a).

Accordingly, Gordon fails to state a claim against Wells Fargo under the FDCPA and Wells Fargo's motion to dismiss (Doc. 7) is **GRANTED**.

*2. Georgia Fair Business Practice Act*

Gordon requests leave to amend his complaint to allege a claim against Wells Fargo under the GFBPA. Doc. 18-2 at 3. Specifically, Gordon alleges that by not disclosing "Wells Fargo Dealer Services and Wells Fargo Auto were alternative names used in business by Wells Fargo Bank" and by creating the "fraudulent" "RISC 2," Wells Fargo violated the GFBPA. Doc. 18-3 ¶ 73. Gordon's GFBPA claim fails for multiple reasons.

The GFBPA does not apply to Gordon's loan transaction. Specifically, Gordon did not provide Wells Fargo with written notice of his claim at least 30 days prior to

bringing this lawsuit as required by O.C.G.A. § 10-1-399(b).  Gordon contends that he provided the appropriate notice "by and through his CFPB complaint," which is presumably his administrative complaint to the Consumer Financial Protection Bureau. *See* Docs. 2 ¶ 5; 20 at 7.  But a complaint to the Consumer Financial Protection Bureau is insufficient to provide Wells Fargo with notice of Gordon's GFBPA claims. Furthermore, the GFBPA "does not apply to transactions that occur in regulated areas of activity, such as loan lending and servicing." *Sheppard v. Bank of Am., NA*, 542 F. App'x 789, 793 (11th Cir. 2013) (first citing *Chancellor v. Gateway Lincoln-Mercury, Inc.*, 233 Ga. App. 38, 44 502 S.E.2d 799, 805 (1998); and then citing *Ne. Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 297 Ga. App. 28, 33-34, 676 S.E.2d 428, 433-34 (2009)).

But even if the GFBPA applied to this transaction, Gordon has failed to allege the essential elements of a GFBPA claim.  "To prevail on a private claim under the [GFBPA], a plaintiff must establish three elements: violation of the Act, causation, and injury." *Johnson v. GAPVT Motors, Inc.*, 292 Ga. App. 79, 84, 663 S.E.2d 779, 784 (2008) (internal quotation marks and citation omitted).

First, Gordon's allegation that the use of multiple entity names violates the GFBPA is insufficient to state a claim because there is "no authority … establishing that the involvement of multiple business entities or use of trade names or 'd/b/a' is deceptive." *Isbell v. Credit Nation Lending Serv., LLC*, 319 Ga. App. 19, 30, 735 S.E.2d 46, 57 (2012).  As Wells Fargo highlights, the identity of Wells Fargo Dealer Services and Wells Fargo Auto is a matter of public record.  Doc. 19 at 7.  And "when the alleged violation of the [GFBPA] is a misrepresentation, the claimant is not entitled to recover if

he had an equal and ample opportunity to ascertain the truth but failed to exercise proper diligence to do so." *Zeeman v. Black*, 156 Ga. App. 82, 87, 273 S.E.2d 910, 916 (1980).  Furthermore, Gordon has not demonstrated a causal connection between Wells Fargo's business names and his purported injury—i.e., that he would not have entered into the RISC if he knew that "Wells Fargo Dealer Services and Wells Fargo Auto were alternative names used in business by Wells Fargo Bank."  Doc. 18-3 ¶ 73; *Isbell*, 319 Ga. App. at 30, 735 S.E.2d at 57.

Second, Gordon's allegation that Wells Fargo created a second fraudulent RISC is insufficient to state a claim because Gordon must show that Wells Fargo breached a duty "owed to the consuming public in general."  *Pryor v. CCEC, Inc.*, 257 Ga. App. 450, 451, 571 S.E.2d 454, 455 (2002) (noting that the GFBPA "does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur in an essentially private transaction") (quoting *Lynas v. Williams*, 216 Ga. App. 434, 436, 454 S.E.2d 570, 573 (1995)).  The creation of a second, fraudulent contract is an act that solely impacted Gordon and is not actionable under the GFBPA.  *Sheppard*, 542 F. App'x at 793 ("Under the facts pled in the Complaint, [the plaintiff] has stated an allegedly deceptive act which has potential impact solely upon her—i.e., the unilateral alteration of the repayment terms of her loan—and she therefore failed to state a claim to relief under the [GFBPA].").

Accordingly, Gordon's request to amend his complaint to allege a GFBPA claim against Wells Fargo is **DENIED** for futility.

*3. Fraud and Deceit*

Gordon requests leave to amend his complaint to allege a "deceit" or fraud claim against Wells Fargo.  Doc. 18-3 ¶¶ 80-87.  Specifically, Gordon claims that Wells Fargo committed fraud by operating under "multiple names" and "attempting … to deprive Gordon of his rights" by issuing the "fraudulent" "RISC 2."  *Id*.  "[T]he tort of fraud has five elements: (1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by the plaintiff, and (5) damage to the plaintiff."  *Woodstone Townhouses, LLC v. S. Fiber Worx, LLC*, 358 Ga. App. 516, 527, 855 S.E.2d 719, 731 (2021).  As stated previously, the use of trade names is not false or even deceptive.  *Isbell*, 319 Ga. App. at 30, 735 S.E.2d at 57.  And Gordon, "cannot show justifiable reliance where the alleged misrepresentation concerns a matter of public record that is readily ascertainable upon inquiry."  *Lakeside Invs. Grp., Inc. v. Allen*, 253 Ga. App. 448, 450, 559 S.E.2d 491, 493 (2002).  As to the alleged "fraudulent" "RISC 2," Gordon does not allege any reliance on the document.  In fact, Gordon actively disputed the legitimacy of the document.  *See Najem v. Classic Cadillac Atlanta Corp.*, 241 Ga. App. 661, 664, 527 S.E.2d 259, 262 (1999).  Thus, Gordon has failed to allege facts supporting his contention that Wells Fargo committed fraud.

Accordingly, Gordon's request to amend his complaint to allege a fraud claim against Wells Fargo is **DENIED** for futility.

*4. Breach of Fiduciary Duty*

Gordon requests leave to amend his complaint to allege a breach of fiduciary duty claim against Michael Santomassimo, Wells Fargo's Chief Financial Officer.  Doc.

18-2 at 3.  Gordon claims Santomassimo owed a "duty to settle the accounting for the company and its consumers," and breached this duty by "failing to equitably credit Gordon's principal account" upon receipt of Gordon's notice "of his complete performance of his obligations."  Doc. 18-3 ¶¶ 96-99.

"[A] a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach."  *Ansley Marine Const., Inc. v. Swanberg*, 290 Ga. App. 388, 391, 660 S.E.2d 6, 9 (2008) (internal quotation marks and citation omitted).  However, under Georgia law, "no fiduciary duty typically arises between a borrower and a lender." *Rubenstein v. Palatchi*, 359 Ga. App. 139, 143, 857 S.E.2d 81, 86 (2021).  Thus, Gordon's claim against Santomassimo fails because Santomassimo does not owe any fiduciary duty to Gordon.  *See Dollar v. NationsBank of Ga., N.A.*, 244 Ga. App. 116, 117, 534 S.E.2d 851, 853 (2000) (holding that because the plaintiff and defendant were in an arm's length loan transaction the defendant owed no fiduciary duty to the plaintiff).

Accordingly, Gordon's request to amend his complaint to allege a breach of fiduciary claim against Santomassimo is **DENIED** for futility.

In sum, Gordon's proposed amended complaint fails to state a claim against Wells Fargo or Santomassimo.  As a result, Wells Fargo's motion to dismiss is **GRANTED** and Gordon's motion to amend his complaint to add claims against Wells Fargo and Santomassimo is **DENIED** for futility.

**B. Claims Against Superior Recovery**

Gordon's original complaint alleged claims against Superior Recovery under the FTCA, TILA, FCRA, and the FDCPA.  Doc. 1.  Gordon's proposed amended complaint

alleges only that Superior Recovery violated §§ 1692c(b) and 1692g(a)-(b) of the FDCPA and committed conversion.  Doc. 18-3.  Because Superior Recovery has not responded, Gordon's motion to amend his complaint to allege claims under §§ 1692c(b) and 1692g(a)-(b) of the FDCPA and for the tort of conversion against Superior Recovery is **GRANTED**.

**C. Claims Against Cox Automotive**

Gordon requests leave to allege an FDCPA and conversion claim against Cox Automotive.  Doc. 18-2 at 3.  Moreover, Gordon alleges a breach of fiduciary duty claim against Stephen Rowley, Cox Automotive's Chief Executive Officer.  *Id*.

*1. Fair Debt Collection Practice Act*

Gordon claims that Cox Automotive violated §§ 1692f and 1692g of the FDCPA when Cox Automotive took "possession of Gordon's Tahoe" and failed to respond to Gordon's "cease and desist and request for validation of debt."  Doc. 18-3 ¶¶ 66-68.  As outlined above, to state a claim under the FDCPA Gordon "must allege, among other things, (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection."  *Reese, LLP*, 678 F.3d at 1216.  Gordan alleges that after Superior Recovery repossessed his car, it transferred the car to Cox Automotive.  Doc. 18-3 ¶¶ 33, 37-38.  The FDCPA applies to entities in the business of collecting debts who use abusive practices in collecting their own debts or those assigned to them—not auction companies who have no interest in an alleged debt and have not had any contact with the alleged debtor.  Gordon has not alleged any facts or cited any legal authority demonstrating that Cox Automotive, the company presumably responsible for selling his car at auction, is a debt collector.

Accordingly, Gordon's request to amend his complaint to allege a FDCPA claim against Cox Automotive is **DENIED** for futility.

*2. Conversion*

Gordon claims Cox Automotive committed the tort of conversion when it took possession of his repossessed car.  Doc. 18-2 ¶¶ 92-95.  "To establish a prima facie case for conversion, "the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property."  *Bo Phillips Co. v. R.L. King Props., LLC*, 336 Ga. App. 705, 707, 783 S.E.2d 445, 449 (2016) (internal quotations and citation omitted).  Here, Gordon alleges that he had the right to possess the 2019 Chevrolet Tahoe because he had "tendered payment in complete performance of his obligation on RISC 1" and that Wells Fargo created a second "fraudulent" "RISC 2."  Doc. 18-3 ¶ 26, 60.  Assuming the allegations in Gordon's complaint to be true, which the Court must do at this stage, Gordon had "the right of possession" under the RISC because he had not defaulted on his loan payments.  *See Seibel v. Soc'y Lease, Inc.*, 969 F. Supp. 713, 715, 718-19 (M.D. Fla. 1997); *Lee v. Toyota Motor Sales USA Inc*, 2016 WL 4608220, at *6 (N.D. Cal. Sept. 6, 2016) ("Regardless of whether Plaintiff held title to the car, the fact that he had not defaulted on his payments (assuming the allegations in the Complaint to be true) is sufficient for the Court to infer that he had the right to possession at the time the car was repossessed by DD.").  Furthermore, Gordon alleges that Cox Automotive currently is in possession of his car, that he demanded Cox Automotive return the car, and that Cox Automotive refused to comply with his demand.

Doc. 18-3 ¶¶ 92-95.  Thus, Gordon has alleged the essential elements of a conversion claim against Cox Automotive.

Accordingly, Gordon's request to amend his complaint to allege a conversion claim against Cox Automotive is **GRANTED**.

### 3. Breach of Fiduciary Duty

Gordon claims Stephen Rowley, Cox Automotive's Chief Executive Officer, owed him a duty "to provide required debt validation information and cease and desist collection" of his vehicle under the FDCPA.  Doc. 18-3 ¶¶ 100-103.  As discussed above, Gordon fails to allege a claim against Cox Automotive under the FDCPA. Accordingly, Rowley, as a Cox Automotive executive, does not owe Gordon a duty to provide "debt validation information" or release Gordon's vehicle.  To the extent Gordon is alleging a common law breach of fiduciary claim, that claim would also fail because Gordon has not alleged any facts supporting a fiduciary relationship.

Accordingly, Gordon's request to amend his complaint to allege a breach of fiduciary claim against Rowley is **DENIED** for futility.

## D. Claims Against Five Star Chevrolet

Gordon requests leave to amend his complaint to allege TILA, GFBPA, and invasion of privacy claims against Five Star Chevrolet, the dealership that sold him the 2019 Tahoe.[4]  Doc. 18-2 at 3.

---

[4] Gordon alleges that Five Star Chevrolet failed to comply with the requirements of the TILA but also that "this claim [is] against Wells Fargo Bank."  Doc. 18-3 ¶¶ 46-53.  To the extent Gordon is alleging a TILA claim against Wells Fargo, that claim fails because the RISC states that Five Star Chevrolet is the "seller-creditor."  Doc. 18-8.  Thus, Five Star Chevrolet—not Wells Fargo—is the creditor within the meaning of the TILA.  *See Muro v. Hermanos Auto Wholesalers, Inc.*, 514 F. Supp. 2d 1343, 1348 (S.D. Fla. 2007) (holding that the seller of a used car was the "creditor" when the agreement stated that the seller was the "creditor-seller" even if the seller intended to assign the contract); *Cannon v. Metro Ford, Inc.*, 242 F. Supp. 2d 1322, 1330 (S.D. Fla. 2002) (same).

1.  *Truth in Lending Act*

Gordon alleges that Five Star Chevrolet is liable under the TILA for (1) failing to disclose the annual percentage rate, cost of financing, and the total cost of credit prior to consummating the agreement; (2) requiring a $1,000 downpayment; (3) failing to disclose that "he was being sold the Tahoe at a different price than what was advertised in his email offer"; and (4) failing to disclose that the agreed upon price in the Retail Purchase Agreement was different than the price displayed in the RISC.  Doc. 18-3 ¶¶ 46-50.

First, Five Star Chevrolet did disclose the annual percentage rate, cost of financing, and the total cost of credit prior to consummating the agreement.  The RISC prominently displays each of these costs in a section labeled "FEDERAL TRUTH-IN-LENDING DISCLOSURES."  Doc. 18-8 at 1.  Gordon's signature affirms that he was given an opportunity to review this information before he signed the RISC.  *Id*. at 4.

Second, requiring a $1,000 down payment does not violate the TILA.  While the TILA requires creditors to *disclose* certain charges, such as a down payment, requiring a down payment is not a violation of the TILA.  *See* 15 U.S.C. § 1638(a); *see also Owens v. Cap. One Auto Fin.*, 2021 WL 7084720, at *3 (M.D. Fla. June 29, 2021), *R. & R. adopted in part, rejected in part*, 2022 WL 19114 (M.D. Fla. Jan. 3, 2022) (noting that the TILA "does not prohibit down payments").  Five Star Chevrolet complied with this requirement when it disclosed the $1,000 down payment in the RISC.  Doc. 18-8 at 1.

Third, Five Star Chevrolet did not violate the TILA by selling Gordon a "Tahoe at a different price then what was advertised in his email offer."  Doc. 18-3 ¶ 49.  The TILA does not preclude creditors from charging higher prices because a customer is

purchasing an item with credit.  Rather it is only when a creditor does not disclose that a price increase is a result of credit use, that a violation of the TILA has occurred.  *Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 327 (6th Cir. 2001) ("*Absent disclosure*, increasing prices because of the extension of credit is not permissible.") (emphasis added).  Here, Gordon contends the advertised price is different from the price he paid.  Docs. 18-3 ¶ 49; 18-4.  But the RISC discloses the price of the vehicle Gordon purchased and explained how the price was calculated based on the credit information Gordon provided.  Doc. 18-8.  Thus, Gordon's allegation that Five Star Chevrolet quoted him a "different" price is insufficient to state a claim.

Finally, Five Star Chevrolet did not "change[] the agreed upon price of the vehicle."  Doc. 18-3 ¶ 50.  Both the Retail Purchase Agreement and the RISC—the documents Gordon cites in support of his contention that Five Star Chevrolet changed the price—both state that the "amount to be financed," i.e., the price of the vehicle, was $54,902.00.  Docs. 18-7 at 1; 18-8 at 1.

Accordingly, Gordon's request to amend his complaint to allege a TILA claim against Five Star Chevrolet is **DENIED** for futility.

*2. Georgia Fair Business Practice Act*

Gordon requests leave to amend his complaint to allege a GFBPA claim against Five Star Chevrolet.  Doc. 18-2 at 3.  Specifically, Gordon alleges that Five Star Chevrolet violated the GFBPA by "changing numbers" in the Retail Purchase Agreement and the RISC, making "false statements that the lender required Gordon to give down payment and submit lease to secure financing," "failing to give Gordon

paperwork for more than six days," and "creating the fraudulent RISC 2."  Doc. 18-3 ¶ 70.

Gordon's GFBPA claim fails because Gordon has not established that the GFBPA applies to the loan agreement.  First, Gordon does not allege that he provided Five Star Chevrolet with written notice of his claim at least 30 days prior to bringing this lawsuit as required by O.C.G.A. § 10-1-399(b).  Second, Gordon must show that Five Star Chevrolet breached a duty "owed to the consuming public in general."  *Pryor*, 257 Ga. App. at 451, 571 S.E.2d at 455.  But Gordon's allegations are about his loan agreement—a private transaction.  *Id*.  Third, the GFBPA "does not apply to transactions that occur in regulated areas of activity, such as loan lending and servicing."  *Id*. (first citing *Chancellor*, 233 Ga. App. at 44, 502 S.E.2d at 805; then citing *Ne. Ga. Cancer Care, LLC*, 297 Ga. App. at 33-34, 676 S.E.2d at 433-34).

Accordingly, Gordon's request to amend his complaint to allege a GFBPA claim against Five Star Chevrolet is **DENIED** for futility.

*3. Invasion of Privacy*

Gordon requests leave to amend his complaint to allege an invasion of privacy claim against Five Star Chevrolet based on the creation of the "RISC 2 without Gordon's knowledge or consent."  Doc. 18-3 ¶¶ 75-79.  The Georgia tort of "invasion of privacy" has four strands: "(1) [I]ntrusion upon the plaintiff's seclusion or solitude, or into her private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity that places the plaintiff in a false light in the public eye; [and] (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness."  *Anderson v. Mergenhagen*, 283 Ga. App. 546, 549, 642 S.E.2d 105, 109 (2007) (alterations in

original) (quoting *Cabaniss v. Hipsley*, 114 Ga. App. 367, 370, 151 S.E.2d 496, 500 (1966)).  "Under Georgia law, in order to state a cause of action for invasion of privacy premised on the public disclosure of private facts, there must be a public disclosure in which the information is distributed to the public at large."  *Finnerty v. State Bank & Tr. Co.*, 301 Ga. App. 569, 571, 687 S.E.2d 842, 844 (2009).

Gordon's claim fails because he does not allege that the "RISC 2" was disclosed "to the public at large" or even to another individual.  *Blakey v. Victory Equip. Sales, Inc.*, 259 Ga. App. 34, 37, 576 S.E.2d 288, 292 (2002) (rejecting invasion of privacy claim where false information "was reported to a credit reporting agency, not the public at large").  Furthermore, while Gordon contends that the "RISC" caused "defamation of character, defamation of credit, loss of economic opportunities and adverse actions to his physical and mental health," these allegations are insufficient to demonstrate public disclosure of "embarrassing private facts."  Doc. 18-3 ¶ 77; *Cumberland Contractors, Inc. v. State Bank & Tr. Co.*, 327 Ga. App. 121, 126, 755 S.E.2d 511, 517 (2014) (rejecting invasion of privacy claim where plaintiff alleged "that the publication of their social security numbers could result in identify theft, credit card fraud, and other offenses that might damage them personally and financially").

Accordingly, Gordon's request to amend his complaint to allege an invasion of privacy claim against Five Star Chevrolet is **DENIED** for futility.

### E. Gordon's Motion for a Temporary Restraining Order

Gordon also moves for a TRO against Wells Fargo and Superior Recovery. Docs. 2; 12.  A TRO is a drastic remedy used primarily to preserve the status quo rather than grant most or all of the substantive relief sought in the complaint.  *Fernandez-*

*Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982).  Factors a movant must show to be entitled to a TRO include: "(1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest."  *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995).

Gordon's TRO requests that the Court halt the sale of his vehicle at private auction.  Docs. 2 at 3; 12 at 2.  Gordon fails to articulate how monetary damages would not compensate him for the loss of his vehicle.  Gordon merely states, in a conclusory fashion, that "without valid assignment, defendant is a debt collector and its act of invasion of privacy against plaintiff are irreparable."  Doc. 12 at 2.  Because Gordon has not established irreparable injury in either his original motion (Doc. 2) or amended motion for a TRO (Doc. 12), both motions are **DENIED**.

### IV. CONCLUSION

For the reasons stated, Wells Fargo's motion to dismiss (Doc. 7) is **GRANTED**. The Clerk is **DIRECTED** to administratively terminate Wells Fargo.  Furthermore, Gordon's motion to amend his complaint (Doc. 18) is **GRANTED in part** and **DENIED in part**.  Gordon is **ORDERED** to file an amended complaint alleging only (1) a §§ 1692c(b) and 1692g(a)-(b) FDCPA claim against Superior Recovery, (2) a conversion claim against Superior Recovery and (3) a conversion claim against Cox Automotive no later than **September 14, 2023**.  The Court reminds Gordon of his obligation under Federal Rule of Civil Procedure 11, a copy of which is attached.  Gordon's motions for a temporary restraining order (Docs. 2; 12), motion to take judicial notice (Doc. 21), and

motion for a hearing (Doc. 22) are **DENIED**.  Finally, because the Court has resolved

the pending motion to dismiss, discovery deadlines are no longer stayed.

      **SO ORDERED**, this 24th day of August, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
